**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO**

**STANLEY IRVIN CLARK**                                                                                           **PLAINTIFF**

**v.**                               **CIVIL ACTION NO. 4:10CV-P14-M**

**KENTUCKY STATE LEGISLATURE et al.**                                      **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Stanley Irvin Clark, a convicted inmate currently incarcerated at the Simpson County Detention Center, has filed this action pursuant to 42 U.S.C. § 1983 against the Kentucky State Legislature in its official capacity; LaDonna Thompson, Commissioner of the Kentucky Department of Corrections, in her official capacity; Al Parke, Deputy Commissioner of the Kentucky Department of Corrections, in his official capacity; Rodney Ballard, Deputy Commissioner of the Kentucky Department of Corrections, in his official capacity; and David Osborne, Jailer of the Daviess County Detention Center, in his individual and official capacities.[1] Clark is seeking compensatory damages, punitive damages, and an injunction prohibiting county jails from holding black state inmates. He is also seeking an order directing that he be transferred to a state facility and rescission of Kentucky Revised Statute §§ 441 and 532.

This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), and on Clark's motion to amend his complaint to add the Simpson County Jailer, Robert Huber, as a defendant in this action. For the reasons that follow, this action will be dismissed for seeking monetary relief from Defendants that are

---

[1]Clark was incarcerated at the Daviess County Detention Center at the time he filed this action.

immune from such relief, for failure to state a claim upon which relief can be granted, and as frivolous. Clark's motion to amend will also be denied because amendment would be futile.

## II. SUMMARY OF COMPLAINT

Clark alleges that "discrimination has been since the inception of the Commonwealth of Kentucky, and continues to be, the determining factor in the administration of justice between Black and White citizens arrested for criminal offenses." He explains that all lawmakers in Kentucky are white and that they have formalized and executed an elaborate plan he calls the "Discriminatory Against African Americans Privatization Plan" otherwise known as Kentucky Revised Statute §§ 441 and 532. He states that to carry out this plan "agreements were made between all the Commonwealth's Attorney and all counties District Attorneys to increase as many misdemeanor charges as possible to low level Class D Felonies forcing some Class D Felonies to become Class C." Next, he explains that "law enforcement officers at all levels had to be allowed to unnecessarily harass racially targeted groups which in this plan would be African Americans." Clark explains that "the harassment techniques were disguised in the form of three specific, subliminal tactics . . . 1) suspicion; 2) probable cause; and 3) good faith."

"Armed with these supposedly indiscriminate tactics, law enforcement officers--city, county or state, can stop, search and arrest, any individual walking or riding anywhere within the Commonwealth of Kentucky." Clark goes on to state that prosecutors, public defenders, judges and parole officers are working along with law enforcement to carry out "the plan." He explains that large numbers of people (primarily African-Americans) were arrested and charged with felonies. Under "the plan" this lead to intentional over-crowding in the state prisons.

Thus, according to Clark, the "ultimate agenda," "privatization of the state Department of

Corrections" was able to come to fruition. To this end, "after securing public sentiment in favor of the county jails housing state inmates by proposing large tax savings for state tax payers, the Kentucky State Legislature proposed, passed, and enacted Kentucky Revised Statute 441 and 532, giving the county jailer by law the authority to house state inmates and function with state functioning as private county jails." Clark explains that "the Discrimination/Privatization Plan is pumping as much additional tax payer monies into participating county/state private jail budgets that it is causing the participating jails to start large expansive programs such as triple bunk beds, inmate construction projects and the like to enable holding even more profitable inmates since they can operate in the most profitable manner achievable unregulated by the state."

Clark explains that he named the "Kentucky Legislature and the Department of Corrections [Defendants] as co-conspirators in the formalization of the Discrimination/Privatization Plan aimed at African-Americans." He then explains that the remaining Defendants are named as "facilitators" of the plan.

Clark concludes by stating that "speaking for all African Americans inmates housed in the county/state private or whatever they are jails, we feel the U.S. Civil Rights Office should force the state of Kentucky to rescind both Kentucky Revised Statutes 441 and 532, in their entirety . . . also all county/state inmates holding state inmates should be inspected immediately to determine if, how and when these facilities attained 'private' or otherwise they should be forced to follow D.O.C. Policies and Procedures if allowed to house state inmates."

### III. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any

3

portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV. ANALYSIS

### A. CLASS CLAIMS

Clark states that he is bringing this on behalf of all convicted state inmates held in county facilities. The complaint is signed only by Clark. He may not put forth claims on behalf of other individuals. 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage."); *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir.1991) (explaining that § 1654 "'does not allow for unlicensed laymen to represent anyone else other than themselves'" (citation omitted)). And, "[g]enerally, *pro* se prisoners cannot adequately represent a class." *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (citing *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000)). Thus, Clark's claims on behalf of other inmates will be dismissed.

**B.     ALL CLAIMS AGAINST THE KENTUCKY STATE LEGISLATURE**

Upon review, the Court will dismiss the claims against the Kentucky State Legislature for two reasons. First, a state and its agencies are not "persons" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Second, all claims (damages and equitable relief) against the state and its agencies are barred by the Eleventh Amendment to the United States Constitution. *Will*, 491 U.S. at 71; *Daleure v. Commonwealth of Kentucky*, 119 F. Supp. 2d 683, 687 (W.D. Ky. 2000) ("The Eleventh Amendment protects the Kentucky state government . . . from suit."). A state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its sovereign immunity under the Eleventh Amendment or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh,* 438 U.S. 781, 782 (1978). In enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332 (1979)).

**C.     MONEY-DAMAGES CLAIMS AGAINST DEFENDANTS THOMPSON, PARKE, & BALLARD**

The official-capacity claims for damages will also be dismissed. Defendants, as state officials and employees sued in their official capacities for damages, are absolutely immune from § 1983 liability under the Eleventh Amendment to the United States Constitution. *Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Second, Defendants are not "persons" subject to suit within the meaning of § 1983 when sued in

their official capacities for monetary damages. *Id.* Consequently, the § 1983 official-capacity claims for money damages against Defendants must be dismissed.

D.   **INDIVIDUAL-CAPACITY CLAIMS AGAINST OSBORNE**

In order to assert a cognizable §1983 claim, a plaintiff must allege specific facts. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). The required facts must provide adequate detail to support the claim, such as specific incidents of deprivation of a plaintiff's rights, how each defendant was involved, the names of other persons involved, dates, and places. The specific facts must also explain how the plaintiff himself was personally injured by the challenged conduct or condition, *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986), and how each defendant is responsible for the alleged injuries. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). Allegations premised upon mere conclusions and opinions fail to state an adequate claim, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and bare and conclusory allegations that a defendant personally deprived the plaintiff of constitutional or statutory rights are insufficient to state a cognizable claim. *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983).

Furthermore, a complaint filed under § 1983 must also show a causal connection between the named defendants and the alleged constitutional deprivation. A § 1983 complaint must allege that specific conduct by the defendants was the proximate cause of the constitutional injury. *King v. Massarweh*, 782 F.2d 825, 829 (9th Cir. 1986). "Congress did not intend § 1983 liability to attach where causation is absent." *Deaton v. Montgomery County*, 989 F.2d 885, 889 (6th Cir. 1993). To establish causation, a plaintiff must adduce "an affirmative link . . . [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged." *Id.* When the theory of causation is a matter of pure speculation and is nothing more

7

than an hypothetical argument, the pleadings are insufficient to sustain a compensable § 1983 claim. *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994).

Clark has not alleged any specifics related to his confinement at the Daviess County Detention Center other than calling it a "concentration camp" and has not described any particular conduct by Defendant Osborne. Because Clark fails to set forth any specific facts with respect to Defendant Osborne in his individual capacity, this claim must be dismissed.

## C. REMAINING CLAIMS

### 1. INSUFFICIENT CONSPIRACY ALLEGATIONS

Clark's injunctive relief claims against Defendants Thompson, Parke, and Ballard and his official-capacity claim against Defendant Osborne are premised on his allegations that these Defendants engaged in an elaborate conspiracy with virtually every state lawmaker to discriminate against African-Americans. To the extent that Clark is attempting to raise a claim under 42 U.S.C. § 1985(3), the Court finds that he fails to state a claim. Section 1985(3) states in pertinent part as follows:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

In order to prove a claim of conspiracy in violation of 42 U.S.C. § 1985(3), Clark must prove: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a

person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or the deprivation of any right or privilege of the United States. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). To state a claim for conspiracy under § 1985(3), there must be specific factual allegations showing the existence of the conspiracy, as well as allegations that Defendants acted with the specific intent to deprive Plaintiff of equal protection of the law; general, conclusory allegations are not enough. *Azar v. Conley*, 456 F.2d 1382, 1384 (6th Cir. 1972). "A complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief." *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009). Vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim. Allegations premised upon mere conclusions and opinions, as are these, need not be accepted as true and, thus, fail to state a claim. *See Chapman*, 808 F.2d at 465. (holding that § 1983 complaint must contain factual basis for claims; skeletal allegations of unconstitutional conduct are inadequate). For these reasons, Clark's conspiracy claims will be dismissed.

    **2.**    **FRIVOLITY**

Furthermore, Clark's claim that virtually every elected official in Kentucky has taken part in an elaborate plan to incarcerate more African-Americans for the purpose of generating revenue for county jails is the type of bizarre conspiracy theory that is subject to dismissal as frivolous. *See, e.g., Best v. Kelly*, 39 F.3d 328, 330-31 (D.C. Cir. 1994) (finding that claims that are "essentially fictitious" include those that allege "bizarre conspiracy theories, any fantastic government manipulations of their will or mind [or] any sort of supernatural intervention").

For the reasons set forth above, the Court will dismiss Clark's complaint by separate

Order.

## V. MOTION TO AMEND

The Court should freely grant leave to file an amended complaint before a responsive pleading has been filed. Fed. R. Civ. P. 15(a). However, such leave should be denied where the amendment would be futile, such as where the material or claims to be added remain subject to dismissal for failure to state a claim. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003).

Clark has moved to amend his complaint to add Robert Huber, Jailer of the Simpson County Detention Center, as a defendant in this action. Apparently, since filing this suit, Clark was transferred from the Daviess County Detention Center to the Simpson County Detention Center. Referring to the Simpson County Detention Center, Clark states, "this place is horrible. They are so bad they even sell transfers from here to other jails." Clark's proposed claims against Huber suffers from the same defect as his claims against Osborne. He has failed to alleged any specific conduct by Huber and his allegations of participation in the alleged "Discriminatory Against African Americans Privatization Plan" are factually insufficient to support a conspiracy claim. As such, Clark's motion to amend (DN 6) is **DENIED** because his proposed amendment is futile.

Date:

cc:     Plaintiff, *pro se*
        Defendants
4414.008